Filed April 23, 1891.

---

No. 14,983.

HUFFMOND ET AL. *v.* BENCE, ADMINISTRATOR.

SUBROGATION.—*To Rights of Grantor.—Conditional Conveyance.*—Where the owner of real estate conveys it in consideration that the grantee shall board, nurse and care for him during his lifetime, and by reason of the failure of such grantee to provide necessary medical aid he is compelled himself to call a physician, such physician will be subrogated to the rights of the owner, and may enforce a lien for the value of his services upon the real estate conveyed.

SUPREME COURT. —*Practice.—Overruling Request for Jury.*—Error in overruling a motion to try the issues in the case by a jury can be presented on appeal only by a motion for a new trial.

From the Putnam Circuit Court.

*D. E. Williamson* and *A. C. Daggy,* for appellants.

*S. A. Hays,* for appellee.

OLDS, C. J.—Jane Rudisill and her husband, David Rudisill, each owned a town lot in the city of Greencastle, and on the 11th day of January, 1881, they joined in a deed and conveyed both of said lots to their daughter, the appellant Surrilda Huffmond. The consideration for such conveyance, as stated in the deed, was one dollar, and in consideration of said Surrilda having boarded, nursed, waited upon and taken care of said Jane and David during the two years before that date last past, and the further consideration that she, said Surrilda, agrees to continue to board, nurse, and take proper care of said Jane and David during their natural lives, reserving to each of said grantors the possession and control by each of the respective lots owned by each during their natural lives. David died intestate. The appellee, Bence, was appointed administrator of his estate, and he filed a claim against said estate in his own favor for one hundred dollars for medical and surgical treatment rendered to the said David in his last sickness. The said Bence filed a complaint against the estate, making the appellant and her husband parties, in which is alleged the conveyance of said real estate by the said Jane and David Rudisill to said appellant in consideration of the agreement stated in said deed; that at the time of said conveyance, prior thereto, and up to the date of his death, said David was afflicted with strangulated hernia, and was subject to frequent attacks of the same; that nursing and taking proper care required that when said David was attacked and afflicted with strangulated hernia it be reduced; that after said conveyance it was mutually agreed between said appellant and David that they should sell said lot, the title to which had been in David prior to the conveyance to appellant, and that the proceeds thereof should be invested in other real estate, the title to be taken in the appellant, reserving the use and control to David during his life, under the same conditions, agreement, and for the same consideration, as the first lot so conveyed as aforesaid was conveyed to said appellant, and that in

pursuance of said agreement they did sell said lot, and joined in a deed, and conveyed the same to the purchaser, and purchased with the proceeds thereof another tract of land, and took the title to the same in the appellant, granting to the said David the use and control of the same during his life, simply substituting the real estate purchased for that sold under the same agreement to nurse and properly take care of the said Jane and David; that David took possession of said tract so purchased, and held the same until his death, when the appellant took possession, and has ever since held the same; that in 1883 the said David was attacked with strangulated hernia, and was in great need of medical and surgical aid and treatment to be relieved, and have the hernia reduced; that he called upon the appellant to provide him with proper medical aid to relieve him, which she neglected and refused to provide for him; and while so afflicted he called upon the said claimant, Bence, and he reduced the hernia, and rendered the services of the value of one hundred dollars, which he seeks to recover; that such services so rendered were necessary to the proper nursing and taking proper care of said David, as the appellant had contracted to do; that when said services were so rendered, and at the date of the death of said David, he had no other property than that conveyed as aforesaid; and said claimant asks that he have judgment against the estate, and said Surrilda Huffmond for the amount of his claim, and that the same be declared a lien upon all of said real estate so conveyed to and now owned by the said appellant, describing it, and that the same be subjected to sale for the payment of said claim.

The appellant demurred to the complaint for want of facts, and upon the grounds that she was an improper party.

It is contended that under the contract as stated in the deed the appellant was not under any obligation to furnish medical aid. We can not concur in such a construction of the contract.

It appears from the averments in the complaint that Jane

and David Rudisill conveyed to their daughter, the appellant, all the real estate they owned, and being all of their property, she agreeing in consideration therefor " to board, nurse and take proper care of them, the said Jane Rudisill and David Rudisill, during their natural lives." The agreement to board, nurse, and take proper care included the doing and furnishing to them whatever was reasonably necessary for their subsistence and comfort. It would be unreasonable to so construe such an agreement as that the child might stand by in times of sickness and permit the parent to suffer and die for want of reasonable and proper medical aid, and yet not be liable for a breach of the contract. Such treatment and neglect would not be a compliance with the contract either in regard to the nursing or taking proper care. To nurse and take proper care, in the sense in which they are used in this agreement, mean to supply the grantors with and to do for them whatever was necessary in case of sickness to restore them to health again ; and, if the appellant could not supply such wants or render such services in person, she was bound to provide them such nursing and care, even if she had to employ others to render the services. The contract did not limit the appellant's liability to such nursing and care as she was able to render to them in person.

The complaint alleges facts showing a necessity for the reduction of the hernia, and that it was proper care and nursing to have it reduced ; that the decedent requested the appellant to have it done, to employ a physician, and she refused to do so, and thereupon he called upon and employed the claimant, Bence, who undertook to and did reduce it, and that proper nursing required the reduction of the hernia.

The averments of the complaint show that the appellant refused to comply with her contract, and perform her part of the agreement she had entered into with the decedent, and he was compelled to procure another person to do what the appellant had agreed to do. Under the decisions of this court he had a right at least to recover from her the amount he was

compelled to pay by reason of her neglect and refusal to comply with her contract, and to have it declared a lien upon the property so conveyed to her as a consideration for such services. Some of the decisions even go far enough to hold it to be a condition subsequent, the non-performance of which worked a forfeiture of the land conveyed, but it is not necessary to go to that extent in this case. *Hamilton* v. *Barricklow*, 96 Ind. 398; *Lindsay* v. *Glass*, 119 Ind. 301; *Richter* v. *Richter*, 111 Ind. 456; *Ikerd* v. *Beavers*, 106 Ind. 483; *Copeland* v. *Copeland*, 89 Ind. 29.

The decedent having the right to call upon claimant to render the services contracted to be performed by the appellant, and which she failed to render, and having a right to collect from her the amount necessarily paid out, and having a lien declared; the appellee, Bence, having performed the services at the request of the decedent, the value of which the decedent had a right to recover, and had a lien securing the same,—the appellee, Bence, has the right in equity to be substituted to the rights of the estate. To illustrate the principle more clearly, suppose the debt had matured in the lifetime of the decedent, the parties would be in the position of the decedent owing the debt to Bence, and his daughter would be owing it to the father, the decedent, and it would be secured by a lien on the real estate. The father being insolvent, the only method by which the debt could be collected would be by foreclosure of the lien. If the appellee, Bence, could not be subrogated to the rights of the father by reason of the debt secured by the lien being in fact due to him, he would be without remedy. Certainly, under such circumstances, in the lifetime of the father, the appellee, Bence, could have enforced the lien and collected his debt, and he does not lose this right by his death. The same principle is applicable as in case of a surety holding an indemnity. As in case of a surety taking a mortgage indemnifying him against the payment of the debt of the principal, the surety being insolvent, the creditor may be

subrogated to the rights of the surety, and foreclose the mortgage given to the surety to secure the debt.

In this case the appellant Mrs. Huffmond is, in fact, the principal debtor. She is the person ultimately liable to pay the debt, though upon the face of the contract she is liable directly to her father, and the debt is secured by a lien upon her land. In principle it is like unto a case where A. and B. make an agreement whereby A. purchases property of C. and gives his note to C. for the amount; afterwards A. turns over the property to B., and B. gives to A. a mortgage to indemnify him against the payment of the debt. A. is insolvent. A suit against him by C. would be of no avail, but B. has agreed and is liable for the payment of the same debt to A., and has received a consideration for such agreement, and has secured its payment by a mortgage. Clearly C. would have a right to be subrogated to the rights of A., and foreclose the mortgage and collect his debt.

In this case Mrs. Huffmond, by the contract, indemnified David Rudisill, by a lien upon her real estate, against any expense or liability for services in being nursed and taken proper care of during life. She fails to comply with the agreement, and he is compelled to and does call upon Bence to render to him the services Mrs. Huffmond had agreed to render. Mrs. Huffmond is liable to pay to Rudisill the value of the services, but he has no money or property wherewith to pay for the service, and it is but equity that Bence should have the right to be subrogated to the rights of Rudisill, and collect from Mrs. Huffmond the debt.

It is but permitting the relief to be granted in the one action which otherwise would require two. The identical debt for which Mrs. Huffmond is liable is due to Bence who rendered the services. Mrs. Huffmond was, in fact, the principal debtor, and her father was her surety, though primarily liable to Bence. It is settled law that securities held by a surety for the payment of a debt are held by him for the payment of the debt, and the creditor may resort to them for a

collection of his debt.   See *Rittenhouse* v. *Kemp*, 37 Ind. 258, 262, and authorities cited; *Sanders* v. *Weelburg*, 107 Ind. 266.   In *Rooker* v. *Benson*, 83 Ind. 250, it is held that subrogation does not depend on privity or strict suretyship.   It is the mode in which equity compels the ultimate discharge of a debt by him who in good conscience ought to pay it, and to relieve him whom none but the creditor could compel to pay it; and this doctrine is applicable to the facts in this case.

There was no error in overruling the demurrer.

The next error assigned is the sustaining of the demurrer to the second paragraph of the appellant's answer.   There is no discussion of the question presented by this ruling, except to say that it is a good answer.   We think there is no error in sustaining the demurrer.

The next error is that the court erred in overruling appellant's motion and request to try the issues in the case by a jury.

In *Ketcham* v. *Brazil, etc., Co.*, 88 Ind. 515, it is held that this question can only be presented by motion for a new trial.

The only additional error discussed relates to the sufficiency of the evidence.   There is some evidence supporting the finding, and we can not disturb it.

There was no objection to the order and judgment in the case and no motion to modify it, and no question is presented as to the right of the appellee to a lien upon the real estate purchased and conveyed to the appellant by the third party in lieu of the lot originally conveyed by the Rudisills.

The judgment is affirmed, at costs of the appellant.

COFFEY, J., took no part in the decision of this case.

Filed April 24, 1891.